IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES DAVIS,

      Petitioner,

v.                                                    CASE NO. 4:10-cv-544-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,[1]

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondent filed a response and an appendix with relevant portions of the state-court record. (Doc. 36.) Petitioner did not file a reply. Upon due consideration of the Petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[2]

## Summary of State Court Proceedings

Petitioner's underlying conviction for lewd and lascivious molestation stems from incidents that occurred from January 1, 2005 to October 17, 2005, between Petitioner and his then aged twelve or thirteen year-old daughter.

At his trial in January 2007, the state presented testimony from the victim, who

---

[1] Because Petitioner is an inmate in the custody of the Florida Department of Corrections (DOC), the Secretary of the DOC is the state officer who has custody of Petitioner, and therefore the Secretary is properly named by his official title as the Respondent in this case. *See* Fed. R. Civ. P. 17(d); Rule 2, Rules Governing Habeas Corpus Petitions under § 2254. The **Clerk** is directed to correct the docket accordingly.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

stated that she would go on overnight trips with Petitioner, who worked as a truck driver. During these trips, Petitioner would make the victim watch pornography and then "jack him off." He would also attempt to "put it in," meaning that he would try to have sex with her. (Doc. 36, Ex. B at 64-65.)[3] In addition to the incidents occurring in Petitioner's truck, the victim also testified that Petitioner would have sex with her at Petitioner's home in Gadsden county, when others were not at home or were sleeping. (*Id.* at 68.) The victim testified that the abuse happened "more than 20 times." (*Id.* at 67.)

The state also presented testimony from the victim's sister and mother. They corroborated the victim's account of her going on overnight trips with Petitioner in his truck and spending time with him at his home.

The state presented testimony from Investigator Jenkins, who was assigned to the case, and Dr. Moorer, an expert witness. Dr. Moorer testified that most child victims of sexual abuse do not have any clinical results that would indicate that abuse had occurred after more than a couple days had passed. (*Id.* at 118-124.) He testified that this could be because of the age and sexual maturity of the victim, and also because vaginal tissue healed very quickly. (*Id.*)

The jury convicted Petitioner as charged with one count of lewd and lascivious molestation. (*Id.* at 196.) He was sentenced to 12 years imprisonment and three years of probation. (Doc. 36, Ex. C at 13.)

Petitioner appealed. However, while his appeal was pending, he filed a *pro se*

---

[3] The record is attached to the Respondent's response as an appendix, containing various appendices. The exhibits are identified within the appendices. Each appendix number does not correspond to an exhibit letter. Rather the exhibits begin at the first appendix and then run consecutively thereafter. The Court will make reference to the exhibit letter rather than the appendix number.

motion to dismiss his direct appeal without prejudice.  (Doc. 36, Exs. D, E.)  His appeal was then dismissed by the First DCA.  (*Id.,* Ex. F.)

Petitioner then filed a *pro se* Fla. R. Crim. P. 3.850 motion on February 22, 2008.  (*Id.* Ex. G at 1.)  The motion presented five grounds for relief, all raising claims of ineffective assistance of counsel.  (*Id.,* Ex. G at 7-11.)  On March 24, 2009, the state court denied the 3.850 motion, and Petitioner appealed.  (*Id.,* Ex. H at 108-117, 227-28.)  The First DCA affirmed without opinion on September 11, 2009, and the mandate issued October 7, 2009.  (*Id.,* Exs. I, J.)

Petitioner filed a petition seeking to file a second *pro se* Fla. R. Crim. P. 3.850 motion on June 22, 2009.  (*Id.,* Ex. K at 1-8.)  His petition was granted insofar as the second motion only alleged new grounds.  (*Id.,* at 9.)  His second motion presented nine new grounds for relief.  ( *Id.*, at 10-26.)  The second motion was denied by the state court on August 21, 2009.  ( *Id.* at 27-29.)  Petitioner appealed, and filed an initial brief on appeal.  (Doc. 36, Ex. K at 255; Ex. L.)  His brief on appeal raised only two arguments: whether the trial court erred in determining unchanged evidence legally permissible as inextricably intertwined evidence; and whether the trial court erred in finding counsel rendered effective assistance of counsel.  (Doc. 36, Ex. L at 2.)  The First DCA *per curiam* affirmed on June 11, 2010, and the mandate issued July 7, 2010. (Doc. 36, Ex. N.)

The instant Petition, which Respondent concedes is timely, followed.  Petitioner asserts fourteen grounds for relief in his *pro se* Petition.  (Doc. 1.)

### Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.") *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting

circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams.*)  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor*] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th

Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id*. at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

## Ineffective Assistance of Counsel

Because some Petitioner's claims allege ineffective assistance of counsel, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S.

668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether

the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id*.  at 788.   When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

<div align="center">

### <u>Discussion</u>

</div>

## I.  Unexhausted Claims

### *Grounds 6 and 7: Prosecution and Trial Court Were Without Jurisdiction to Prosecute in Gadsden County*

Petitioner raised grounds 6 and 7 of his petition as grounds 1 and 2 in his second Rule 3.850 motion in the state court.  (Doc. 36, Ex. K at 10-26.)  The second motion was denied by the state court, and Petitioner appealed.  ( *Id.* at 27-29.)  In appealing his denial of the 3.850 motion to the First DCA, Petitioner did not include in his initial brief Grounds 6 and 7 of the instant petition.  (Doc. 36, Ex. K at 255; Ex. L.) His brief on appeal raised only two arguments: whether the trial court erred in determining unchanged evidence legally permissible as inextricably intertwined

evidence, and whether the trial court erred in finding counsel rendered effective assistance of counsel. (Doc. 36, Ex. L at 2.) The First DCA *per curiam* affirmed on June 11, 2010, and the mandate issued July 7, 2010. (Doc. 36, Ex. N.)

Before Petitioner filed his Petition in this Court he was required to exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion required Petitioner to give the Florida state courts a "full and fair opportunity" to resolve all his federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

Florida law establishes that claims for which an appellant does not present any argument–or presents only conclusory argument–are waived. *See, e.g., Gamble v. State*, 877 So. 2d 706 (Fla. 2004). Accordingly, a movant must present all claims– whether summarily denied or denied after an evidentiary hearing–in the initial brief to the appellate court. *Prince v. State*, 40 So. 3d 11 (Fla. 4th DCA 2010); *Williams v. State,* 24 So.3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in the appellate brief.)

Federal district courts in Florida – including this Court – that have considered this

issue have determined that a petitioner's failure to raise a ground in his brief before the Florida District Courts of Appeal waives federal habeas review of any such omitted claims. *Corn v. McNeil*, No. 3:08-cv-199-MCR-EMT, 2010 WL 5811434, at *17 (N.D. Fla. Nov. 24, 2010) ("The undersigned concludes that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his appellate brief (or for which he provides only conclusory argument), even when the insufficiently denied claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas.") *See also Ross v. McNeil*, 5:07-cv-219-RS-EMT, 2010 WL 2179039 (N.D. Fla. Apr. 14, 2010); *Sharp v. McNeil*, No. 4:07-cv-17-MP-MD, 2009 WL 981594, at *13-14 (N.D. Fla. Apr. 10, 2009); *Durain v. McNeil*, No. 2:08-cv-24-FTM-29DNF, 2008 WL 4888989, at *9 (M.D. Fla. Nov. 12, 2008); *Williams v. McDonough*, No. 8:02-CV-965-T-30MAP, 2007 WL 2330794, at *1-2 (M.D. Fla. Aug.14, 2007); *Walker v. Sec'y, Dep't of Corr.*, No. 8:05-cv-1539-T-17MAP, 2007 WL 1747181, at *4 (M.D. Fla. June 18, 2007.)

Because Petitioner failed to raise Grounds 6 and 7 of the instant Petition in his initial brief on appeal to the First DCA, Petitioner did not exhaust his available state remedies with respect to each of those claims. Petitioner cannot now take a second appeal from the denial of his 3.850 motion in order to successfully exhaust these claims. The claims, therefore, are procedurally defaulted.

Petitioner makes no argument that he can show cause for his failure to properly present these claims to the First DCA. Petitioner has failed to demonstrate cause for his failure to properly present any of these claims to the First District Court of Appeal,

prejudice from his default, or that a fundamental miscarriage of justice would occur if these claims were not considered by this Court.  Accordingly, Grounds 6 and 7 in the Petition are unexhausted in state court, and each of those claims for relief is procedurally barred and, thus, it is inappropriate for this Court to consider these claims on federal collateral review.

The Court will consider Petitioner's remaining claims as these claims were exhausted in the state court and are properly considered on federal collateral review.

## II.  Ineffective Assistance of Counsel Claims

### Ground 1: Ineffective Assistance– Failure to Object to Dr. Moorer's Testimony

Petitioner contends that defense counsel should have objected to the testimony of Dr. Moorer, the expert witness, who testified for the prosecution, because his testimony "only vouched for the credibility of the victim's testimony [and] not to any evidence at trial."  (Doc. 1 at 27.)  Petitioner raised this claim as ground 1 in his first state postconviction motion, and the state court denied the claim.  (Doc. 36, Ex. H at 108-09.)  The First DCA affirmed without opinion.  (*Id.* Ex. I.)

In denying this claim, the state court concluded that "Defendant's claim is without merit and is refuted by the record."  (Doc. 36, Ex. H at 108.)  The state court wrote that Dr. Moorer explained that "virgin exams" are not performed on girls, who allegedly have been sexually abused where the abuse occurred days ago because in the majority of cases it cannot be determined whether abuse has occurred based on an exam. The state court noted that "Dr. Moorer clearly informed the jury that he did not examine the victim in this case; moreover he never gave his opinion on the facts of this case or as to

the victim's credibility, and he never gave a conclusion as to whether or not the victim was sexually abused." (*Id.* at 109.) Thus, "an objection or motion by counsel to exclude Dr. Moorer would neither have been warranted nor successful. For the above reasons, counsel was not deficient, and Defendant was not prejudiced." *Id.*

Petitioner's counsel cannot be found ineffective for failing to make an objection that would have been meritless. The state court correctly identified *Strickland* on the standard and found that counsel was not deficient and Petitioner was not prejudiced. On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Ground 2: Ineffective Assistance– Failure to Pursue a Statement of Particulars

Petitioner next contends that counsel was ineffective for not pursuing a statement of particulars regarding the amended information. Petitioner alleges that "counsel should have and could have moved for a statement of particulars in which the information alleged a lengthy time span in which the alleged offense could have taken place." (Doc. 1 at 30.) Petitioner raised this claim as ground 2 in his first state postconviction motion, and the state court denied the claim. (Doc. 36, Ex. H at 110-11.) The First DCA affirmed without opinion. (*Id.* Ex. I.)

In denying this claim, the state court noted

The child testified to general time frames in which the sexual molestation occurred at her father's house and in his truck. However, the child could not recall the exact dates of all of the incidents of sexual abuse, and given the nature of the crime, the State was not required to prove the exact date(s) of the molestation. . . In Defendant's case, a statement of particulars following the Amended Information would have been no more

specific than the Amended Information itself.

> Moreover, counsel filed a demand for statement of particulars after the original Information was filed . . . The only change from the original Information to the Amended Information was to correct the age of the victim; the dates of the molestation did not change. . . Accordingly, another statement of particulars would not have provided any new information.  Counsel was not deficient, and Defendant cannot establish any prejudice.

(Ex. H at 110.)

Petitioner's counsel cannot be found ineffective for failing to make a request that would have been meritless.  The state court correctly identified *Strickland* on the standard and found that counsel was not deficient and Petitioner was not prejudiced. On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Ground 3: Ineffective Assistance– Failure to Object to State's Withholding of Evidence

Petitioner argues that "the disclosure of the Children Affairs examination of the victim would have shown no traceable evidence that the victim ever had sexual intercourse."  (Doc. 1 at 32.)  Petitioner alleges that the evidence from the examination was favorable to the defense and that the evidence was "suppressed" by the state.  *Id.*

Although Petitioner titles this claim as one of ineffective assistance, it is unclear how this claim has anything to do with his counsel. Petitioner states that "[t]his error is attributable to the State wherein counsel was unaware that such results existed to possible exonerated Petitioner."  (Sic.) (Doc. 1 at 34.)

This claim is similar, but not identical to one that Petitioner raised in his first state

postconviction motion.  In ground 3 of his first 3.850 motion, Petitioner alleged

ineffective assistance "by not objecting to state withholding evidence most favorable to

defense: whereof, exam done from children's affair showing Dr. Moorer, testimony

impeaching and scientific development incorrect, also would have impeach witness and

testimony."  (Sic.) (Doc. 36, Ex. G at 9.)  The state court denied this claim, and the First

DCA affirmed without opinion.  (*Id.* Ex. I.)

Thus, it is evident that Petitioner's made an ineffective assistance claim in his

first state postconviction motion because he alleges that his counsel should have

impeached Dr. Moorer with the evidence from the "children's affair examination."

However, now Petitioner is attempting to make out a claim of a *Brady*[4] violation, and he

does not mention impeachment at all in his memorandum on Ground 3 of the instant

Petition.

The examination Petitioner references was performed  by Dr. Waris.  The

examination shows that Dr. Waris treated the victim for a sexually transmitted disease

some time after the abuse had occurred.   In denying Petitioner's claim, the state trial

court held that

> Defendant's exhibit does not impeach Dr. Moorer's or the victim's
> testimony in any way.  If anything, that information would have implicated
> Defendant as a possible cause of the disease.  Furthermore, Defendant's
> exhibit does not show that Dr. Waris performed any type of "virgin exam"
> on the victim, and it does not show that Dr. Waris disagreed with Dr.
> Moorer's testimony regarding the limitations of physical examinations in
> child victims of sexual molestation.  Unless Defendant gave the victim the
> sexually transmitted disease, the victim's visit to Dr. Waris was otherwise

---

[4] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Brady held that "the suppression by the prosecution
of evidence favorable to an accused upon request violates due process where the evidence is material
either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373
U.S. at 87.

not related to this case.  Counsel was not deficient, and Defendant was
not prejudiced.

Additionally, to the extent Defendant asserts that the State
committed a Brady violation, Defendant contradicts himself by asserting
that his attorney was in fact aware of the treatment provided by Dr. Waris .
. . Thus, the State did not commit a Brady violation . . . Moreover, even if
counsel was not aware of Dr. Waris' treatment, Defendant's exhibit
establishes the information would not have been exculpatory and
potentially could have been inculpatory.

(Ex. H at 112.)

Consequently, *Brady* does not apply because Defendant's counsel was aware of

the examination by Dr. Waris. And even if counsel was not aware of Dr. Waris'

examination the results of the examination were inculpatory and thus the failure to

disclose the evidence would not does not violate due process.  *Weatherford v. Bursey*,

429 U.S. 545 (1977).  Accordingly,  Petitioner has not established that the state court's

rejection of this claim provides a basis for federal habeas relief.

### Ground 4: Ineffective Assistance– Failure to Object to Trial Court's JOA

Petitioner alleges that counsel was ineffective for failing to object "to the trial

judge putting in his own motion for judgment of acquittal."  Petitioner contends that

because the "trial court on its own motion *sua sponte* entered and denied a Motion for

Judgment of Acquittal," that Petitioner suffered "grave and substantial prejudice where

counsel failing to object to the Court's *sua sponte* filing and ruling on a Motion for

Judgment of Acquittal precluded trial counsel from adequately and effectively setting

forth legally sufficient motion in which to refute the State's allegations."  (Doc. 1 at 36.)

Petitioner raised this claim in his first state postconviction motion, and it was

denied by the state court.  (Doc. 36, Ex. H at 112-14.)  The First DCA affirmed without

opinion. (Ex. I.) In denying this claim, the state court explained that

> Before the State rested its case, the judge stated, "Presuming there is - - the judgment of acquittal, the motion is made and denied." The State then called its final witness. After the State rested, a bench conference was held, and the judge requested the court reporter as well. Due to an error, the court reporter was unable to transcribe the mid-trial discussion. However, the transcript later established that counsel did in fact make a mid-trial motion for JOA, and he renewed the motion after the defense rested. Thus, Defendant's claim that counsel failed to renew the motion at the end of trial or within 10 days is refuted by the record. In response to counsel's renewed motion for JOA the judge stated that he was reiterating the prior ruling that the State presented a prima facie case which, if believed by the jury, would provide sufficient evidence for a finding of guilt. The judge then denied the renewed motion for JOA. Counsel was not deficient.
>
> Moreover, regardless of the issue of deficiency, Defendant cannot establish prejudice. As the judge determined, the State did present a prima facie case of Lewd or Lascivious Molestation. The elements of Lewd or Lascivious Molestation under Florida Statute section 800.045(5)(c)(2) are: the intentional touching, by a perpetrator 18 years of age or older, in a lewd or lascivious manner, of the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person 12 years of age or older but less than 16 years of age, or the forcing or enticing of the victim to so touch the perpetrator. The State presented evidence of each element. Specifically, the State presented evidence that the Defendant, the victim's father, was over the age of 18 when he, on multiple occasions, forced or enticed his 12 year old daughter to undress, watch pornographic videos with him, start to have sex with him, and masturbate him. Importantly, Lewd or Lascivious Molestation requires only touching and does not require proof of penetration or intercourse. Thus, Defendant's assertion that the State failed to prove the victim had sexual intercourse is irrelevant. Because the State did in fact present a prima facie case of Lewd and Lascivious Molestation, different action by counsel regarding the motion for JOA would not have caused the judge to grant the motion and would not have ultimately resulted in a reversal of Defendant's conviction on direct appeal.

(Ex. H at 112-114.) (Internal citations omitted.)

Petitioner's counsel cannot be found ineffective for failing to make an objection that would have been meritless, and Petitioner has not established any prejudice,

considering that the motion for JOA was made and renewed by counsel, and denied

because the state had presented a prima facie case.  On this record, Petitioner has

failed to show that the state court's rejection of this claim was contrary to, or an

unreasonable application of *Strickland,* or an unreasonable determination of the facts in

light of the evidence adduced in state court.

### Ground 5: Ineffective Assistance– Failure to Present Charlie Walker as a Witness and Failure to Suppress Taped Statements from Voice Stress Test

In this ground Petitioner asserts two different claims of ineffective assistance.

First, Petitioner contends that his trial counsel was ineffective for failing to call Charlie

Walker, owner of C.J.W. Trucking Company, as a defense witness.  Second, Petitioner

argues that counsel was ineffective for not suppressing "taped statements and results

form the voice stress test taken on October 25, 2010, and the violations of the "No

Contact" order that was give by Children Affairs." (Sic.) (Doc. 1 at 38.)

With respect to his first claim, Petitioner asserts that Walker would have been

able to produce driving records and logs, which allegedly would have shown that the

victim's testimony was false.

With respect to the second claim, It is unclear why Petitioner is arguing that

counsel was ineffective for *not* suppressing the tape, when he goes on to state that

"The tape was never put into evidence.  The trial judge had made a stipulation on using

the tape, but counsel and state disregarded the stipulation order."  And then,

confusingly, Petitioner seems to argue that defense counsel should have introduced the

tape, stating, "[t]he tape was another valuable part of Petitioner's defense strategy.  The

tape could have showed that the case should have been closed for the lack of

evidence." (Sic.) (Doc. 1 at 38.)

Petitioner presented both parts of this claim as ground 5 in his first

postconviction motion. In denying the first part of his claim, the state court concluded

as follows:

> In Ground 5, Defendant presents a multitude of assertions. First,
> Defendant claims counsel provided ineffective assistance by failing to call
> Charlie Walker . . . at trial. Defendant claims that Walker . . . would have
> testified that he was only employed with CJW trucking company until May
> 26, 2005. For the reasons and attachments identified in the latter part of
> Ground 2, Defendant cannot demonstrate prejudice, and his claim is
> without merit. The substance of Walker's . . . expected testimony would
> not have resulted in a different outcome at trial.

(Ex. H at 114.) (Internal citations omitted.)

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses

impose a heavy showing since the presentation of testimonial evidence is a matter of

trial strategy and often allegations of what a witness would have testified to are largely

speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

In view of the heavy showing necessary to succeed on a claim that counsel

performed deficiently with respect to an uncalled witness, and the deference that must

be afforded to counsel's strategic decisions, on this record the Court concludes that

Plaintiff has failed to establish that the state court unreasonably concluded that defense

counsel did not perform deficiently. There is at least a "reasonable argument that

counsel satisfied *Strickland's* deferential standard," with respect to his trial strategy.

*See Harrington*, 131 S.Ct. at 785. Thus, Petitioner has not established that the state

court's rejection of this claim provides a basis for federal habeas relief.

In denying the second part of this claim, the state court held:

Defendant next asserts counsel was ineffective for failing to suppress the "taped statement and resulted from the voice stress test taken on 10/2505." Defendant was not prejudiced, however, because neither that tape nor any other tape was used at trial. Accordingly, the outcome would not have been any different if counsel had moved to suppress the tape. Defendant then asserts that his attorney and the State both discussed the contents of the 10/25/05 tape during their opening statements. This claim is refuted by the record. During their opening statements, both attorneys referred to the interview conducted on 10/25/05; however, neither attorney mentioned the existence of a tape or voice stress analysis. The attorneys did discuss, in their opening statements, a tape in the context of a 10/20/05 controlled phone call. They explained that a controlled call was made on 10/20/05 but that the tape is not available due to a recording malfunction. Importantly, the 10/20/05 phone call and the 10/25/05 interview were entirely separate events. The judge and attorneys discussed the 10/25/05 interview at length, and the Court set parameters for testimony about the interview. The Court also determined that testimony regarding the voice stress analysis would not be admissible. Neither attorney violated that ruling.

To the extent Defendant claims his attorney should have used the tape to "prove that the case was closed because of the [lack] of evidence," the claim is without merit because the tape was deemed inadmissible. Even if the tape and voice stress analysis results had been admissible, the contents of the tape would have been adverse to Defenant, because it contains Investigator Jenkins determination that Defendant was not being truthful in his claims of innocence. Counsel was not deficient for protecting his client from potentially incriminating evidence.

(Ex. H at 115-16.)

Petitioner's counsel cannot be found ineffective for protecting his client from potentially incriminatory evidence. Even assuming, *arguendo,* that counsel was deficient, Petitioner has not shown prejudice. Given the deference that is afforded to trial counsel's strategic decisions, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland.*

### Ground 11: Ineffective Assistance– Failure to Request Trial Court to Charge Jury With Precautionary Instructions

Petitioner contends that his trial counsel rendered ineffective assistance in failing

to request the trial court to give the jury cautionary instructions as to the testimony on collateral crimes.  (Doc. 1 at 54.)  Petitioner presented this claim as ground 6 in his second postconviction motion, and it was denied by the state court and affirmed without written opinion by the First DCA.  (Doc. 36, Exs. K, N.)

In rejecting this claim on postconviction review, the state court wrote:

> This was not Williams Rule Evidence that typically triggers the standard instruction.  Moreover, the testimony itself was not of the quality or nature to risk a conviction for a crime not charged in the information.  The absence of a cautionary instruction does not undermine confidence in the outcome of this case.  The defense theory was Victim was lying about sexual activity, regardless of when it occurred.  The jury found the 14-year-old victim credible and her testimony was not otherwise rebutted or internally inconsistent as to the sex crimes inflicted upon her.

(Ex. K at 28.)

In Florida,"[i]t is well settled law that the defense is entitled to jury instructions on his theory of defense if evidence has been introduced to support those instructions." *Cooper*, 573 So.2d at 76.  The state court determined that the facts of Petitioner's case did not support the type of jury instruction Petitioner alleges his trial counsel should have requested.  Furthermore, Petitioner cannot demonstrate that but for the failure to request this instruction, the outcome of the trial would have been different.  On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Grounds 12 and 13: Ineffective Assistance– Failure to Request Court to Weigh Probative Value and Potential Prejudice and Failure to Object to Evidence of Other Crimes or Acts Becoming Feature of the Trial

In ground 12, Petitioner argues that "because counsel failed in his duty to

provide effective trial advocacy, and permitted the introduction of prejudicial evidence

without an objection and or request for cautionary instructions, Petitioner suffered

substantial prejudice in the jury receiving the prejudicial testimony as a feature of the

trial instead of an incident of the charged offense." (Doc. 1 at 59.)  Petitioner presented

this claim as ground 7 in his second postconviction motion, and it was denied by the

state court and affirmed without written opinion by the First DCA. (Doc. 36, Ex. K, N.)

The state court denied this claim, writing:

> This evidence was inextricably intertwined with the charges in that
> evidence of the sexual and emotional relationship between Defendant and
> his daughter was necessary to fully and fairly place in context the sex
> crimes he was charged with committing in 2005.  The evidence was highly
> probative, and "fairly" prejudicial.  No motion in limine would have been
> granted, even had Defense counsel requested the Court to conduct a
> weighing analysis.

(Ex. K at 28.)

In ground 13, Petitioner alleges that defense counsel should have objected to

evidence of other crimes or acts becoming the feature of the trial.  (Doc. 1 at 60.)

Petitioner presented this claim as ground 8 in his second postconviction motion, and it

was denied by the state court and affirmed without written opinion by the First DCA.

(Doc. 36, Exs. K, N.)   In denying this claim, the state court wrote "[t]his is essentially a

restatement of the above grounds."  (Ex. K at 28.)

The record discloses that the testimony presented to the jury was entirely

relevant to the charged crime.  Petitioner's counsel cannot be found ineffective for

failing to make a request that would have been meritless.  Furthermore, Petitioner

cannot demonstrate that but for the failure to request the court to conduct a weighing

analysis, the outcome of the trial would have been different.  Petitioner's speculative

argument regarding prejudice is not enough to carry his burden of proof and persuasion as to the prejudice prong of *Strickland.* On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Ground 14: Ineffective Assistance– Failure to Challenge Juror for Cause

Petitioner agues that counsel should have moved to strike juror Golden because Golden's sister was a victim of a sex crime and because Golden worked as a correctional officer. (Doc. 1 at 63-65.) Petitioner presented this claim as ground 9 in his second postconviction motion, and it was denied by the state court and affirmed without written opinion by the First DCA. (Doc. 36, Ex. K, N.) In denying this claim, the state court wrote

> The colloquy quoted by Defendant does not state any ground for challenge for cause of Golden. In fact, Golden stated nothing about the crime against his sister would affect him as a juror in this case. Moreover, Golden was in the first round of peremptory strikes. Defendant was present at all times. He could see the jurors, and hear their voice inflections when they responded to questions. None of this shows up on a cold record. The record does show Defendant consulted with counsel regarding strikes. The defense used only 5 of its 6 peremptory strikes. Therefore, Golden could have been struck early for any reason, and Defendant was consulted before "no more strikes" was announced by Defense counsel. Finally, there is nothing in the record to show that juror Golden was in fact unfair or biased. There is no prejudice under the *Strickland* standard.

(Ex. K at 29.) (Internal citations omitted.)

The state court correctly identified the *Strickland* standard and determined that there was no prejudice. Even if counsel did err, Petitioner has failed to show that the result of the trial would have been different but for counsel's failure to challenge juror

Golden.  Other than his conclusory allegations that juror Golden was biased because of

the crime committed against his sister and his employment as a correctional officer,

Petitioner has not demonstrated a reasonable probability that but for counsel's failure to

strike juror Golden the outcome of the trial would have been different.  On this record,

Petitioner has failed to show that the state court's rejection of this ineffective-assistance

claim regarding striking juror Golden was contrary to, or an unreasonable application of,

*Strickland*

### III.  Petitioner's Other Claims

> ### Grounds 8 and 9: Failure to Weigh Probative Value of Evidence of Uncharged Crimes Against Potential for Unfair Prejudice, and Fundamental Error in Allowing Evidence of other Acts of Child Molestation to Become a Feature of the Trial

Petitioner contends in ground 8 that "the testimony of the crimes occurring

outside of Gadsden County, Florida [the incidents that took place in Petitioner's truck]

only mislead the juror by distracting them form [sic] the cental issue of the trial and

considering the additional fact that no limiting instructions were provided, these crimes,

in the jury's mind, became the feature instead of the incident."  (Doc. 1 at 47.)

In ground 9, Petitioner contends that "the record also reflects that a substantial

amount of testimony of crimes occurring outside the County of Gadsden and the State

of Florida were proffered to the jury.  So much so that it became a feature of the trial."

(Doc. 1 at 49.)  Petitioner presented these claim as grounds 3 and 4 in his second

postconviction motion, and they were denied by the state court and affirmed without

written opinion by the First DCA.  (Doc. 36, Exs. K, N.)

Respondent contends that these two grounds were not presented to the Florida

state courts as properly federalized claims and, therefore, are not cognizable on

Federal habeas review.  (Doc. 36 at 68, 73.)  The Court disagrees.  In Petitioner's

second motion for postconviction relief, he alleges that "Due Process Clause

guarantees the fundamental elements of fairness in a criminal trial."  (Doc. 36, Ex. K at

15.)  Although Petitioner does not specifically cite the United States Constitution, he

does raise an argument under the "Due Process Clause," not simply an argument that

"due process" rights were violated. Thus, this was sufficient to raise the federal claim.

Accordingly, the Court will evaluate the claims on the merits.

In denying ground 8 of the instant petition  on postconviction review, the state

court wrote

> Defendant alleges unfair prejudice in that the testimony of the 14-year-old
> victim (Defendant's daughter) described sexual activity and abuse on
> many occasions.  She described when it would begin and how it would
> typically occur, and included the time period of the charge.  Defendant
> was charged by Amended Information with Lewd and Lascivious
> Molestation occurring between January 1, 2005 and October 17, 2005.
> The record conclusively demonstrates the sexual relationship of the
> Defendant with his daughter was inextricably intertwined with the offense
> charged.  Clearly, specific other criminal acts were not the feature of the
> trial. The evidence simply gave the charges on trial a context.  Any motion
> to keep this evidence out would have been denied as frivolous.  The
> victim's testimony makes this particularly obvious.  The context of this
> testimony within the trial also supports this conclusion.

(Ex. K at 27.)

The record discloses that the testimony presented to the jury was entirely

relevant to the charged crime.  All of the testimony concerned the sex acts that

Petitioner committed with his daughter, whether they occurred at his home in Gadsden

county or in his truck while Petitioner was making runs.  On this record, Petitioner has

failed to show that the state court's rejection of this claim was contrary to, or an

unreasonable application of federal law, or an unreasonable determination of the facts

in light of the evidence adduced in state court.

With respect to ground 9, the state court explained

This ground is not "fundamental error." Moreover, the victim's testimony within the context of the trial, while highly relevant and argued appropriately, refutes that the "other acts" were a feature of the trial. Otherwise, Defendant's claim is a restatement of ground 3.

(Ex. K at 28.)

This claim is repetitive of Petitioner's prior claims and does not merit further

discussion.

### Ground 10: State's Failure to Provide Written Statement of Acts or Offenses Intended to be Used at Trial Violated Due Process

Petitioner argues that his due process rights were violated because the

information charged him with offenses occurring in Gadsden county, but there was

testimony during the trial about crimes that occurred outside of Gadsden county.

Petitioner presented this claim as ground 5 in his second postconviction motion,

and it was denied by the state court and affirmed without written opinion by the First

DCA. (Doc. 36, Exs. K, N.) In denying this claim, the state court held:

There is no due process duty to provide notice of collateral crimes. At most, it could be a rule or statutory violation, which applies when there is Williams rule evidence. However, evidence is not under Williams rule procedures when the evidence of the defendant's acts or behavior is inextricably intertwined with the crime charged. Finally, the record refutes Defendant's claim of surprise and inability to prepare. Defendant was asked during the investigation about any truck trips with Victim and he denied them. He denied all sexual activity with his daughter. This occurred long before trial. Defense counsel had also taken Victims' deposition.

(Doc. 36, Ex. K at 28.)

As discussed above in connection with Petitioner's other grounds, there was no collateral crimes evidence. All of the testimony concerned the sex acts that Petitioner committed with his daughter, whether they occurred at his home in Gadsden county or in his truck while Petitioner was making runs. Consequently, on this record Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence adduced in state court.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, in light of the foregoing, it is respectfully **RECOMMENDED:**

1. The petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 13th day of February 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.